**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROBLOX CORPORATION,<br><br>      Plaintiff,<br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>      Defendants. | Case No. |

## DECLARATION OF CHRISTIAN BAYLEY

I, Christian Bayley, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I am the Head of Licensing Marketing of ROBLOX CORPORATION and am knowledgeable about or have access to business records concerning all aspects of the brand protection operation of ROBLOX CORPORATION including, but not limited to, its trademarks, other intellectual property, sales, on-line sales, advertising, marketing, media coverage, and associated international operations. I make this declaration from matters within my own knowledge, except where otherwise stated.

3. Plaintiff, ROBLOX CORPORATION, acts as the sales, marketing, design and distribution arm of ROBLOX products worldwide. ROBLOX CORPORATION is the official source of ROBLOX products.

4. ROBLOX CORPORATION is in the business of developing, marketing, selling and distributing ROBLOX products. David Baszucki and Erik Cassel created the human co-experience platform ROBLOX in 2004 and released it in 2006. ROBLOX provides an online platform that hosts a digital world where users create virtual games and experiences and connect with other users. The ROBLOX platform includes ROBLOX-provided graphics, interfaces, and tools for the creation of content by users for users. ROBLOX users, in turn, develop games, experiences, and virtual items for use on Roblox by themselves and other users. The ROBLOX platform hosts over 58.8 million average users per day. The Roblox platform is available at www.roblox.com. A true and correct screenshot of the www.roblox.com landing page is below.

https://www.roblox.com/



5. ROBLOX CORPORATION is the owner of U.S. Trademark Registration No. 6,200,694 for the "ROBLOX" word mark in classes 9, 16 and 25; Registration No. 5,460,112 for the "BLOXY" word mark in class 41; and Registration No. 5,292,052 for the "POWERING

IMAGINATION" word mark for classes 9, 35 and 41 (collectively the "ROBLOX Trademarks"). The registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the above ROBLOX Trademarks are attached hereto as Exhibit 1.

6. The ROBLOX Trademarks are distinctive and identify the merchandise as goods from ROBLOX CORPORATION

7. The ROBLOX Trademarks have been continuously used and never abandoned.

8. ROBLOX CORPORATION has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the ROBLOX Trademarks. As a result, products associated with the ROBLOX Trademarks are recognized and exclusively associated by consumers, the public, and the trade as being products sourced from ROBLOX CORPORATION

9. The success of the ROBLOX brand has resulted in its significant counterfeiting. Consequently, ROBLOX CORPORATION is implementing an anti-counterfeiting program and is investigating suspicious websites and online marketplace listings identified through external vendors in proactive Internet sweeps. ROBLOX CORPORATION has identified numerous online marketplace accounts linked to fully interactive websites and marketplace listings on platforms, including the fully interactive commercial Internet stores operating under the Defendant Online Marketplace Accounts identified in Schedule A which is attached to the Complaint (collectively, the "Defendant Internet Stores"), which were offering for sale, selling, and importing counterfeit products in connection with counterfeit versions of ROBLOX CORPORATION's federally registered ROBLOX Trademarks (the "Counterfeit ROBLOX Products") to consumers in this Judicial District and throughout the United States.

3

Despite ROBLOX CORPORATION's enforcement efforts online, Defendants have persisted in creating the Defendant Internet Stores.

10. We perform, supervise, and/or direct investigations related to Internet-based infringement of the ROBLOX Trademarks. Our investigation shows that Defendants are using the Defendant Internet Stores to sell Counterfeit ROBLOX Products from foreign countries such as China to consumers in the U.S. and elsewhere. We, or someone working under our direction, analyzed each of the Defendant Internet Stores and determined that Counterfeit ROBLOX Products were being offered for sale to the United States, including Illinois. This conclusion was reached through visual inspection of the products listed for sale on the website, the price at which the Counterfeit ROBLOX Products were offered for sale, other features commonly associated with websites selling counterfeit products, because Defendants offered shipping to the United States, including Illinois, and because Defendants and their websites do not conduct business with ROBLOX CORPORATION and do not have the right or authority to use the ROBLOX Trademarks for any reason. True and correct copies of screenshot printouts showing the active Defendant Internet Stores reviewed are attached as Exhibit 2.

11. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores or wholesalers selling genuine ROBLOX products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and Amazon. The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with

authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. ROBLOX CORPORATION has not licensed or authorized Defendants to use its ROBLOX Trademarks, and none of the Defendants are authorized retailers of genuine ROBLOX products.

12. Upon information and belief, Defendants also deceive unknowing consumers by using the ROBLOX Trademarks without authorization within the content, text, and/or meta tags of their web sites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for ROBLOX products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine ROBLOX products. Further, Defendants utilize similar illegitimate SEO tactics to propel new Internet Stores to the top of search results after others are shut down.

13. Defendants often go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant Internet Stores often use specialized services that conceal the owners' identity, contact and internet IP address information. Upon information and belief, Defendants regularly create new Internet Stores on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

14. Even though Defendants operate under multiple fictitious names, there are

numerous similarities among the Defendant Internet Stores. For example, many of the Defendant Internet Stores have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit ROBLOX Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit ROBLOX Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same Internet Store registration patterns, unique product listing description and layouts, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user- defined variables, domain redirection, lack of contact information, identically or similarly priced similar hosting services, similar name servers, and the use of the same text and images.

15. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new Internet Stores under new aliases once they receive notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

16. Counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as Amazon accounts behind layers of payment gateways so that they can continue operation in spite of ROBLOX CORPORATION's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds

from their Amazon accounts to off-shore bank accounts outside the jurisdiction of this Court.

17. Monetary damages alone cannot adequately compensate ROBLOX CORPORATION for ongoing infringement because monetary damages fail to address the loss of control of and damage to ROBLOX CORPORATION's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to completely ascertain due to the inability to fully quantify the monetary damage caused to ROBLOX CORPORATION's reputation and goodwill by acts of infringement.

18. ROBLOX CORPORATION's goodwill and reputation are irreparably damaged when the ROBLOX Trademarks are used on goods not authorized, produced, or manufactured by ROBLOX CORPORATION Moreover, consumer brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to ROBLOX CORPORATION's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

19. ROBLOX CORPORATION is further irreparably harmed by the unauthorized use of the ROBLOX Trademarks because counterfeiters take away ROBLOX CORPORATION's ability to control the nature and quality of products used with the ROBLOX Trademarks. Loss of quality control over goods using the ROBLOX Trademarks and, in turn, loss of control over our reputation is neither calculable nor precisely compensable.

20. The sale of Counterfeit ROBLOX Products using the ROBLOX Trademarks also causes consumer confusion, which weakens ROBLOX CORPORATION's brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit ROBLOX Products they have purchased originated from ROBLOX CORPORATION will come to believe that ROBLOX CORPORATION offers low-quality products. Inferior quality products will result

in increased skepticism and hesitance in consumers presented with genuine ROBLOX products, resulting in a loss or undermining of ROBLOX CORPORATION's reputation and goodwill. Counterfeit ROBLOX CORPORATION Products, primarily coming from China can be extremely dangerous and present alarming safety hazards to children.

21. ROBLOX CORPORATION is further irreparably damaged due to a loss in exclusivity. The ROBLOX products are meant to be exclusive. ROBLOX CORPORATION's extensive marketing and distribution of ROBLOX products are aimed at growing and sustaining sales of ROBLOX products. The ROBLOX Trademarks are distinctive and signify to consumers that the products originate from ROBLOX CORPORATION and are manufactured to ROBLOX CORPORATION's high-quality standards. When counterfeiters use the ROBLOX Trademarks on goods without ROBLOX CORPORATION's authorization, the exclusivity of ROBLOX CORPORATION's products, as well as ROBLOX CORPORATION's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

22. ROBLOX CORPORATION will suffer immediate and irreparable injury, loss, or damage if an ex parte Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 6, 2023.

/s/ _____
CHRISTIAN BAYLEY